**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-15-0000906**
**31-OCT-2016**
**09:47 AM**

NO. CAAP-15-0000906

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
GREGORY FOWLER HAAS, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CR. NO. 12-1-002K)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Foley and Leonard, JJ.)

Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Gregory Fowler Haas (Haas) by amended complaint with second-degree assault with a dangerous instrument of James Smith (Count 1); second-degree assault with a dangerous instrument of Gafatasi Napoleon (Napoleon)[1] (Count 2); first-degree assault of Shadely Haynes (Haynes) (Count 3); and third-degree assault of Jack Keanaaina (Count 4). The charges against Haas stem from an incident in which Haas allegedly used a cow bone to assault others.

I.

Before the jury was selected, the State moved to dismiss Count 1, and the Circuit Court of the Third Circuit (Circuit Court)[2] dismissed Count 1 with prejudice.

---

[1] "Napoleon" was apparently misspelled "Napolean" in the amended complaint.

[2] The Honorable Ronald Ibarra presided.

At trial, the State introduced evidence of a post-arrest statement made by Haas. Haas told the police that his son had died in 2005 from drugs and bad stuff, and Haas referred to drugs and alcohol "out here" and bad things going on. According to Haas, he went out to threaten people and made a mistake. Haas also talked about wanting to avenge the death of his friend. Haas was carrying a cow bone looking for the person he believed had killed his friend. He got into an altercation with people he did not know. Haas admitted that he attacked some people with a "club," which he said was a "cow bone." Haas identified photographs taken at the scene by the police as depicting the bone he used "against everybody there."

According to Napoleon, he saw Haas chasing Haynes, and Haas had an object in his hand which Haas used to strike Haynes in the back of the head. Haas also used the object to strike Napoleon on the head. The police recovered three pieces of bone from the scene, which along with photographs of the pieces of bone recovered, were admitted in evidence.

Dr. Richard McDowell (Dr. McDowell) was the emergency physician at Kona Community Hospital who treated Haynes and Napoleon on the night of the incident. Dr. McDowell was qualified, without objection, as an expert in the field of emergency medical treatment. During his testimony, Dr. McDowell used medical records relating to his treatment of Haynes and Napoleon, including a CT scan ordered for Haynes, to refresh his recollection. Dr. McDowell testified that Haynes had suffered an epidural hematoma, a blood clot on the brain, which was a life-threatening injury that created a substantial risk of death. Dr. McDowell explained that an epidural hematoma is one of the most time-critical injuries a person can sustain and that a person with this condition must be taken for neurosurgery as quickly as possible. Dr. McDowell testified that Napoleon sustained a forehead laceration and scalp laceration that constituted a major avulsion, laceration, or penetration of the skin. The Kona Community Hospital medical treatment records for Haynes (State's

Exhibit 39) and for Napoleon (State's Exhibit 41) were subsequently admitted in evidence.

The jury found Haas guilty as charged of Counts 2 and 3, and it acquitted Haas of Count 4. The Circuit Court entered its Judgment on October 28, 2015.

II.

On appeal, Haas contends: (1) the State failed to lay a sufficient foundation for the admission of the hospital medical records of Haynes (State's Exhibit 39) and Napoleon (State's Exhibit 41); and (2) there was insufficient evidence to show that the instrument used fits within the definition of a dangerous instrument. We affirm.

III.

We resolve the issues raised by Haas on appeal as follows.

A.

Haas contends that the State failed to lay a sufficient foundation for the admission of the hospital medical records of Haynes and Napoleon in evidence. In particular, he argues that the Circuit Court erred in admitting the records showing the results of the CT scan of Haynes, which Dr. McDowell relied upon in his testimony regarding the extent of Haynes' injuries.[3/]

We conclude that any error of the Circuit Court in admitting into evidence the hospital records of Haynes, including the results of his CT scan, was harmless beyond a reasonable doubt. Dr. McDowell's expert testimony about his diagnosis of Haynes and the extent of Haynes' injuries did not require the admission of the records of the CT scan into evidence. Dr. McDowell was qualified, without objection, as an expert in the field of emergency medical treatment. Dr. McDowell testified that a CT scan of Haynes was ordered in connection with Haynes'

---

[3/] Although Haas' point of error challenges the foundation for the admission of the hospital records for both Haynes and Napoleon, his argument only directly addresses the admission of Haynes' records, and in particular, the records reflecting the results of Haynes' CT scan. We focus our discussion on the records directly challenged by Haas.

examination and that CT scans were something that he looked at to make diagnosis and treatment decisions.

Hawaii Rules of Evidence (HRE) Rule 703 (1993) provides in relevant part:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. <u>If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence</u>.

(Emphasis added.) HRE Rule 703 permits an expert to render opinions "based on data not admissible in evidence so long as 'of a type reasonably relied upon by experts in the particular field.'" Commentary to HRE Rule 703. Haas does not dispute that the results of a CT scan are the type of data reasonably relied upon by emergency physicians, like Dr. McDowell, in rendering an opinion about the diagnosis or the extent of a patient's injuries.[4] Dr. McDowell's expert opinion about Haynes' injuries

---

[4] Indeed, the Commentary to HRE Rule 703 addresses the situation presented by this case and explains that the admission of the underlying hospital records is not required for a physician to render an opinion regarding the diagnosis of his or her patient. The Commentary to HRE Rule 703 provides:

> [HRE] Rule 703 allows opinions based on data not admissible in evidence so long as "of a type reasonably relied upon by experts in the particular field." The Advisory Committee's Note to Fed. R. Evid. 703 points out:
>
> > The rule is designed to broaden the basis for expert opinions beyond that current in many jurisdictions and to bring the judicial practice into line with the practice of the experts themselves when not in court. Thus a physician in his [or her] own practice bases his [or her] diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays. Most of them are admissible in evidence, but only with the expenditure of substantial time in producing and examining various authenticating witnesses. The physician makes life-and-death decisions in reliance upon them. His [or her] validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

(Brackets omitted.)

was admissible even if Haynes' CT scan had not been admitted in evidence. Accordingly, we conclude that assuming arguendo that the Circuit Court erred in admitting into evidence the records of Haynes' CT scan and his other hospital records without an adequate foundation, any such error did not affect the outcome of the case and was harmless beyond a reasonable doubt.[5]

B.

Haas contends that there was insufficient evidence to prove that the instrument used fits within the definition of a dangerous instrument. We disagree.

Of Haas' convictions, only his conviction on Count 2 for second-degree assault against Napoleon involved a charge that required proof of the use of a dangerous instrument. The definition of "dangerous instrument" for purposes of second-degree assault includes any "weapon, device, instrument, material, or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." Hawaii Revised Statutes (HRS) § 707-700 (2014).

We conclude that when viewed in the light most favorable to the State, there was sufficient evidence to show that Haas assaulted Napoleon with an instrument that constituted a dangerous instrument. The State presented evidence that Haas was carrying a cow bone and that he used the cow bone to attack Napoleon and Haynes by striking them in the head with it. The attack on Haynes resulted in serious bodily injury. The State also introduced pieces of bone recovered from the scene and photographs of the pieces of bone recovered. We conclude that the State presented sufficient evidence to show that in assaulting Napoleon, Haas used a dangerous instrument, namely, a cow bone, "which in the manner it [was] used or [was] intended to

---

[5] Our analysis also applies to any challenge by Haas to the admission of Napoleon's hospital records.

be used [was] known to be capable of producing death or serious bodily injury."  See HRS § 707-700.

IV.

Based on the foregoing, we affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawai'i, October 31, 2016.

On the briefs:

Dean T. Kauka
for Defendant-Appellant

Dale Yamada Ross
Deputy Prosecuting Attorney
County of Hawai'i
for Plaintiff-Appellee

*Craig H. Nakamura*

Chief Judge

Associate Judge

Associate Judge

6